UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| FUNERAL CONSUMERS ALLIANCE INC, | § | |
| *et al*, | § | |
| | § | |
| Plaintiffs, | § | |
| VS. | § | CIVIL ACTION NO. H-05-3394 |
| | § | (CONSOLIDATED) |
| SERVICE CORPORATION | § | |
| INTERNATIONAL, *et al*, | § | |
| | § | |
| Defendants. | § | |

## AMENDED MEMORANDUM OPINION AND ORDER

### I.    INTRODUCTION

Before the Court is the defendants', Hillenbrand Industries, Inc., Batesville Casket Company, Inc., Service Corporation International and Alderwoods Group, Inc., motion to dismiss the plaintiffs' suit, Funeral Consumers Alliance, Inc. (FCA), and the several individual consumer plaintiffs,[1] pursuant to Federal Rules of Civil Procedure, Rule 12(h)(3) for lack of subject matter jurisdiction.  The Court has entertained the arguments of counsel, examined the current pleadings and historical Memoranda and Orders and determines that the defendants' motion should be granted.

### II.    PROCEDURAL HISTORY

This consolidated case [Consolidated Nos. 05-CV-3397, 05-CV-3398, 05-CV-3440, 05-CV-3395, 05-CV-3399, and 05-CV-3460] was originally filed in October 2005.  Other related cases were filed in other Texas Districts or Divisions [05-CV-0246 and 05-CV-4120] and in the

---

[1] The original individual consumer plaintiffs are Gloria Jaccarino Bender, Marsha Berger, John Clark, Sandra Gonzalez, Anthony J. Jaccarino, Anna Kain, Maria Magsarili, Tony Magsarili, Frances H. Rocha, and Deborah Winch.  No longer named as consumer plaintiffs are:  Donna Sprague, Nancy and Ira Helman, Donald Sprague, and Gay Holtz.

Northern District of California [05-CV-1804].  The plaintiffs filed this suit as a class action alleging antitrust violations under Sections 1 and 2 of the Sherman Act.  *See* 15 U.S.C. §§ 1 and 2.  On or about October 18, 2006, the Court adopted the Memorandum and Recommendation of the Magistrate Judge, denying the defendants' motion to dismiss, filed pursuant to FRCP, 12(b)(6).  *See* [Document Nos. 459 and 470].  Thereafter, the plaintiffs' motion for class certification was denied and the case has proceeded to this point -- trial.  Once again, the defendants move the Court to dismiss the plaintiffs' suit pursuant to FRCP 12(h)(3).

On June 15, 2010, the plaintiffs and defendant, Stewart Enterprises, Inc., entered into a settlement agreement whereby Stewart paid a substantial sum of money that, undisputedly, exceeds the amount of any damages that might be claimed by the plaintiffs.  As a result, the plaintiffs are not now seeking damages.  Instead, they seek to present the case to a jury to establish liability on the part of the defendants and to collect an attorneys' fee and court costs.

### III.   FACTUAL BACKGROUND[2]

This is an antitrust suit brought by FCA, a consumer rights organization with roughly 400,000 members, and individual consumer plaintiffs on behalf of themselves to enjoin alleged anticompetitive agreements concerning the sale of Batesville caskets and to recover damages for the defendants' alleged illegal casket overcharges.[3]  The consumer plaintiffs allegedly purchased Batesville caskets from one of the Funeral Home defendants for deceased family members. They assert that the prices they each paid for these caskets (ranging from $2,095 to $3,695) were supracompetitive because of the defendants' conduct.

The defendants (SCI, Alderwoods, and Stewart) collectively own and operate approximately 2,150 funeral homes in the United States through which they sell thousands of

---

[2] Factual background facts are restated from the Court's Memorandum and Report; *See* [Document # 459].
[3] In developing the summary of facts, the Court accepts all of the factual allegations in plaintiffs' first amended consolidated class action complaint as true.  *See Blackburn v. City of Marshall*, 42 F.3d 925, 931 (5th Cir. 1995).

caskets annually and virtually all of the caskets they sell are Batesville caskets. SCI, Alderwoods, and Stewart are the three largest distributors of Batesville caskets in the United States.  The plaintiffs allege that because of the size and scope of the funeral network, the defendants have substantial market power over Batesville. The plaintiffs further allege that the defendants have substantial market power over consumers, which is evidenced by the power over casket pricing. According to the plaintiffs, the defendants charge consumers significantly more than the independent casket discounters ("ICDs")[4] charge for comparable caskets.  The plaintiffs allege that despite the price differentials, other consumers continue to purchase caskets from the defendants. The plaintiffs maintain that the market power of the defendants is further evidenced by their ability to exclude competition and reduce consumer choice in the casket market. According to the plaintiffs, the defendants' market power over both consumers and Batesville is even greater when aggregated with the collective power of the alleged funeral home co-conspirators.

Batesville is the largest manufacturer of caskets in the United States. It manufacturers approximately 45% of the caskets sold to consumers in the United States and is the dominant brand.  The plaintiffs allege, however, that Batesville refuses to sell caskets to the ICDs. The plaintiffs assert that based on Batesville's agreement with the defendants and their co-conspirators,[5] Batesville supplies caskets only to licensed funeral homes. Batesville is wholly-owned and controlled by Hillenbrand, which, according to the plaintiffs, has assented to and approved Batesville's participation in the alleged conspiracies at issue.

---

[4] Independent casket discounters or "ICDs" are third-party sellers of caskets that are unaffiliated with a licensed funeral home.
[5] Plaintiffs allege that numerous entities, including funeral homes that are Dignity Memorial "partners" with SCI, have conspired with the defendants.  According to the plaintiffs, co-conspirators include the National Funeral Directors Association ("NFDA"), certain Funeral Director Associations ("FDAs"), as well as casket manufacturers Aurora Casket Company ("Aurora") and York Group, Inc. ("York").

The defendants' latest motion contends that because Stewart Enterprises' settlement with the plaintiffs exceed any monetary recovery that the plaintiffs could hope to recovery, an essential element of the plaintiffs' suit cannot be established.   Therefore, the defendants assert, the plaintiffs' suit should not be continued merely to establish liability in order that the plaintiffs' counsel may seek an attorneys' fee.

## IV.   STANDARDS OF REVIEW

### A.   *Standard Under Rule 12(b)(1) and 12(h)(3)*

Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction. Fed. R. Civ. P. 12(b)(1).   "If [a federal] court determines at any time that it lacks subject-matter jurisdiction, [it] must dismiss the action."  Fed. R. Civ. P. 12(h)(3); *see also Berkshire Fashions, Inc. v. M.V. Hakusan II,* 954 F.2d 874, 880 n.3 (3rd Cir. 1992) (citing *Rubin v. Buckman,* 727 F.2d 71, 72 (3d Cir. 1984) (reasoning that "[t]he distinction between a Rule 12(h)(3) motion and a Rule 12(b)(1) motion is simply that the former may be asserted at any time and need not be responsive to any pleading of the other party.")   Since federal courts are considered courts of limited jurisdiction, absent jurisdiction conferred by statute, they lack the power to adjudicate claims.  *See, e.g., Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998) (citing *Veldhoen v. United States Coast Guard*, 35 F.3d 222, 225 (5th Cir. 1994).   Therefore, the party seeking to invoke the jurisdiction of a federal court carries "the burden of proving subject matter jurisdiction by a preponderance of the evidence."  *Vantage Trailers, Inc. v. Beall Corp.,*  567 F.3d 745, 748 (5th Cir. 2009) (citing *New Orleans & Gulf Coast Ry. Co. v. Barrois,* 553 F.3d 321, 327 (5th Cir. 2008); *see* also *Stockman,* 138 F.3d at 151.

When evaluating jurisdiction, "a [federal] court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case."  *MDPhysicians & Assoc., Inc. v. State Bd.*

*of Ins.,* 957 F.2d 178, 181 (5th Cir. 1992) (citing *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. 1981)); *see also Vantage Trailers*, 567 F.3d at 748 (reasoning that "[i]n evaluating jurisdiction, the district court must resolve disputed facts without giving a presumption of truthfulness to the plaintiff's allegations.")  In making its ruling, the court may rely on any of the following:  "(1) the complaint alone, (2) the complaint supplemented by undisputed facts evidenced by the record, or (3) the complaint supplemented by undisputed facts plus the court's resolution of disputed facts."  *MDPhysicians*, 957 F.2d at 181 n.2 (citing *Williamson*, 645 F.2d at 413).

###   B.      Article III Standing

"A question of standing raises the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues.  Standing is a jurisdictional requirement that focuses on the party seeking to get his complaint before a federal court and not on the issues he wishes to have adjudicated."  *Pederson v. La. State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000) (citing *Cook v. Reno*, 74 F.3d 97, 98-99 (5th Cir. 1996) (internal quotations and footnotes omitted)).  The United States Supreme Court has explained that in order to demonstrate Article III standing, a plaintiff must establish the following:

> It is by now well settled that 'the irreducible constitutional minimum of standing contains three elements.  First, the plaintiff must have suffered an 'injury in fact' – an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical.  Second, there must be a casual connection between the injury and the conduct complained of . . . .  Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.'

*United States v. Hays*, 515 U.S. 737, 742-43, 115 S. Ct. 2431, 132 L. Ed.2d 635 (1995) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 – 61, 112 S. Ct. 2130, 119 L.Ed.2d 351

(1992)); *see also Sierra Club v. Peterson*, 185 F.3d 349, 360 (5th Cir. 1999).   To obtain injunctive relief, "an additional inquiry is required, namely that plaintiffs show that they are likely to suffer future injury by the defendant and that the sought-after relief will prevent that future injury." *James v. City of Dallas, Tex.,* 254 F.3d 551, 562 – 563 (5th Cir. 2001) (citing *City of Los Angeles v. Lyons,* 461 U.S. 95, 102, 103 S. Ct. 1660, 75 L.Ed.2d 675 (1983) ("'Past exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief.'" (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495 – 96, 94 S. Ct. 669, 38 L. Ed.2d 674 (1974)) (other citations omitted).   Nevertheless, "if the injury is accompanied by 'any continuing, present adverse effects,' standing for injunctive relief can be found."   *James*, 254 F.3d at 563 (citing *Lyons*, 461 U.S. at 102, 103 S. Ct. 1660 (internal quotations omitted) (quoting *O'Shea*, 414 U.S. at 495-96, 94 S. Ct. 669); *see also Soc'y of Separationists, Inc. v. Herman*, 959 F.2d 1283, 1285 (5th Cir. 1992) ("To obtain equitable relief for past wrongs, a plaintiff must demonstrate either continuing harm or a real and immediate threat of repeated injury in the future."))

## IV.   CONTENTIONS OF THE PARTIES

### A.   *The Defendant's Contentions*

The defendants contend that the "case or controversy" requirement of Article III of the federal Constitution bars consideration of the plaintiffs' case because the plaintiffs lack standing to seek injunctive or declaratory relief.   In this regard, the defendants assert that the individual plaintiffs' claims for overcharge damages on their purchases have been fully satisfied by their settlement with Stewart.   And, because the alleged injuries have been satisfied, there are no facts alleged that would support forward-looking relief in the nature of injunctive or declaratory relief. Essentially the defendants argue that there are no real or immediate threats of future injuries that

necessitate the relief sought.  Therefore, the consumer plaintiffs lack standing to pursue injunctive or declaratory relief.  With regard to the FCA, the defendants make the same legal argument on a different basis.

The defendants contend that the FCA too, lacks standing to pursue this case.  In three points, the defendants assert the following contentions:  (a) the FCA has never purchased a casket, and therefore, has not suffered an injury by the alleged conduct; (b) the FCA has failed to identify a particular individual within its membership who would have standing; it, (c) even if such an individual were identified, the evidence show that the FCA is not a membership organization and, therefore, lacks the necessary "indicia of membership" required for associational standing. The defendants also contend that the plaintiffs' claim for costs and an attorneys' fee is moot in light of the settlement.  Moreover, the defendants argue, the plaintiffs lack standing to assert other claims, therefore, no Article III jurisdiction remains for the sole purpose of pursuing court costs and an attorneys' fees.

## B.    *The Plaintiffs' Contentions*

At the outset, the plaintiffs argue that the defendants' motion to dismiss is merely an attempt at a "second bite" at dismissal by raising arguments previously raised in their motion to strike the plaintiff's jury demand.  So here, again, the plaintiffs assert that the defendants' arguments have no legal merit.  First, the plaintiffs argue that they have standing to pursue their claims for injunctive relief and an attorneys' fee in spite of the Stewart settlement.  The plaintiffs merely need to show that they were injured by violations of antitrust laws and they are thereby positioned to recover an attorneys' fee and court costs.

The plaintiffs also argue that they yet have standing to pursue injunctive relief because they are threatened with future harm by the defendants.  Either they or their estates, they argue,

are potentially exposed to artificially high prices for Batesville caskets.  Therefore, the plaintiffs assert, injunctive relief is still a triable issue.  As well, the plaintiffs contend that the FCA has standing to pursue injunctive relief because:  (a) their members [consumer members] are threatened with future harm by the defendants' conduct; and, (b) its by-laws allow affiliates to participate in the FCA's corporate governance.  Therefore, the FCA, separately, has standing.

Finally, the plaintiffs assert that the defendants are applying the wrong legal standard in pursuit of their motion to dismiss.  They conflate constitutional standing with antitrust standing, argues the plaintiffs.  The plaintiffs contend that Article III standing is satisfied when a plaintiff shows injury-in-fact.  Hence, the plaintiffs need not establish that their injuries "flows from that which makes defendants' acts unlawful."  Moreover, the plaintiffs assert, the defendants' standing attack rests in the disputed facts of the case.

V.      ANALYSIS AND DISCUSSION

The defendants contend that the plaintiffs lack standing to prosecute this case either for damages or injunctive relief.  This assertion is based on the fact that the consumer plaintiffs entered into a settlement on the eve of trial with Steward Enterprises, one of the defendants, for a sum of money that exceeds the sum of their collective claim for damages even were their alleged damages trebled.  The plaintiffs do not dispute this fact.  However, they argue that they are entitled to pursue their claim for injunctive relief to conclusion.  And, even though the FCA has no claim for actual damages, it may pursue injunctive relief on behalf of its consumer members and affiliates based on the likelihood that one or more of its members will suffer a Clayton Act injury.  The Court will address the standing issue separately for the consumer plaintiffs and the FCA.

**- A -**

Private causes of action are authorized to enforce antitrust laws and, in particular, Sections 4 and 16 of the Clayton Act. *See* 15 U.S.C. § 4 and 16; *see also Financial & Security Products Assn. v. Diebold, Incorporated,* [2005 WL 1629813 (N. D. Cal.)]. However, because the consumer plaintiffs no longer seek monetary damages but instead, injunctive relief, they must meet the legal standard to obtain a preliminary injunction while establishing Clayton Act standing. *Id.*

In order to establish standing under Section 16 of the Act, a plaintiff must establish that: (a) an actual injury or potential injury of the type that the Clayton Act was intended to forestall occurred; and (b) that the injury was a result of the alleged antitrust violation. *See Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)." The injury or [potential injury] must reflect the anticompetition effect either of the violation; or of anticompetitive acts made possible by the violation. *Id.* The consumer plaintiff, because they no longer have a claim for actual damages, must establish a "potential injury" under the Act in order to proceed with their claim for injunctive relief. *Ibid.*

In order to obtain injunctive relief, the consumer plaintiffs must establish that: (a) there is a strong likelihood of success on the merits; (b) there is a possibility of irreparable injury to the plaintiffs if injunctive relief is not granted; (c) the balance of hardships favor the plaintiff and the public. *See Summers v. Earth Island Inst.*, ____ U.S. ____ 129 S.Ct. 1142, 1149 (2009); *see also Bauer v. Texas,* 341 F.3d 352, 358 (5th Cir. 2003).

The consumer plaintiffs assert that they may continue pursuing monetary relief and a finding of antitrust liability. They also argue in the future that they may seek and purchase caskets for other family members. Finally, they argue that they have standing because the injury

they suffered is one that is "capable of repetition, yet evading review," citing to *Citizens United v. Federal Election Comm'n* _____ U.S. _____, 130 S.Ct. 876, 895 (2010). The Court notes that the second element of the consumer plaintiffs' basis for injunctive relief and for continuing a lawsuit that has been settled, parallels in significant respects a plaintiff's burden under the Clayton Act where the stated injury is potential as opposed to actual.

In *Ortiz v. John O. Butler Company,* 94 F.3d 1121 (7th Cir. 1996), the Court addressed the issue of whether an actual case or controversy remains where the plaintiff has already received the compensatory damages sued for. *Id.* at 1125. While that case is not dispositive here, it establishes a truth that abides – the consumer plaintiff must establish a potential Clayton Act injury in the future and also meet the elements for injunctive relief in order to remain in court. *See James*, 254 F.3d at 562-63.

The Court is of the opinion that the consumer plaintiff cannot establish an irreparable injury or a future threat and, therefore, a suit solely for injunctive relief evades them. However, assuming that the consumer plaintiffs could establish a past violation of the Clayton Act, that fact merely sets the table for the plaintiff to establish yet, a separate basis for injunctive relief (*Bauer*, 341 F.3d at 538). The Court is of the opinion that the argument made by the consumer plaintiff, that they may purchase Batesville caskets in the future for another family member, is not the type of "potential" injury that *Brunswick* identified as actionable under the antitrust laws and does not establish an irreparable injury. Moreover, it cannot be said that these types of potential injuries are irreparable as is revealed here by the consumer plaintiff's recent settlement.

Here, the consumer plaintiffs alleged overcharges by the defendants in an amount less than $22,000 each. They settled their suit for an amount far greater than each could recover were the case successfully tried to conclusion. Hence, there are no damages that the consumer

plaintiffs could recover against the remaining defendant.  And, because the consumer plaintiffs' damages are quantifiable, as evidenced by their settlement, no irreparable injury is articulated even if a Clayton Act violation occurred.  As well, the evidence shows that the consumer plaintiffs have not sought to purchase a Batesville casket in over five years.  This fact suggests that any injury that the consumer plaintiffs might have suffered was a singular event injury and does not reveal a "real" immediate or potential injury in the future.  *See O'Shea v. Littleton,* 414 U.S. 488, 495 (1974).  The result is that the consumer plaintiffs' claim for actual injury under the Clayton Act is rendered moot by their settlement, and there is no evidence of an irreparable or imminent injury at this time or in the future. *See Summers* \_\_\_\_ U.S. \_\_\_\_\_; 129 S.Ct. at 1149; *see also Plumley v. Landmark Chevrolet, Inc.,* 122 F.3d 308, 309 (5th Cir. 1997).

## - B -

Next, the defendants assert that the FCA lacks standing to assert a Clayton Act violation and thereby cannot seek injunctive relief and an attorneys' fee in behalf of other unnamed individual consumers or its affiliate organizations.  The FCA disputes this assertion and claims that it has standing [associational standing] to pursue injunctive relief on behalf of its members.  It contends that it has several hundred thousand individual consumer members throughout the 50 states as well as affiliate members who participate in the FCA's corporate governance.  A review of the FCA by-laws is appropriate.  Article III of the FCA by-laws defines memberships as follows:

1.    Affiliates shall be nonprofit funeral information societies, memorial societies, funeral cooperatives, and such other organizations that engage in similar and related activities, which subscribe to the purposes of the organization.

2.    Supporting members shall be any religious, fraternal, labor, cooperative, or other organization which subscribes to the objectives and desires to support the work of the organization, and which accepts the obligations of supporting membership, but without the privilege of voting.

3.  Approval of the Board of Directors shall be required for Affiliate and Supporting members.

4.  Friends

   a.  An individual, business, or other organization may apply for membership as a "Friend of FCA." A membership donation will be requested from those seeking to become a Friend in order to offset the costs of printing and mailing materials to them. Friends are entitled to receive regular mailings such as the FCA newsletter.

   b.  Members of the funeral industry may join as Friends, but Friends may not participate in the governance of the organization.

   c.  Individuals living in an area where there is no local Affiliate are encouraged to become Friends. Membership may be transferred to a local Affiliate when appropriate.

According to FCA by-laws, the FCA leaves to the local Affiliates the matter of the method by which the Affiliate's ballots are determined.  There is no indication that a representative procedure is in place or even required in order to have membership in the FCA. Hence, membership as an Affiliate means that a non-profit society may participate through delegated persons, yet have no individual member that is a consumer according to the Clayton Act.  As well, it is the Executive Committee of the FCA that determines the business of the organization.

With regard to the Supporting members, there is no mandated board or democratic rule in place.  They are often church or husband/wife operations that have no identifiable individual who claims to be a member of the FCA.  *See* [FCA By-Laws at FCA 3516]; *see also* [Defendant's Exh. No. 162, Exec. Director's Report, Jan. 1999].  Also, they have no voting rights within the FCA.  The same is true as it relates to the category of "Friend." Persons who hold membership as a "Friend" are not permitted to participate in the governance of the FCA.  In

truth, there is no individual membership in the FCA that permits a vote on any matters of FCA business.  Therefore, there is no "person" who might claim a Clayton Act injury.  *See Brunswick*, 429 U.S. at 486 (footnote 10).  [The discussions concerning Section 4 indicates that the remedies available for "the people of the United States as individuals."]  Hence, the FCA, which is governed by other organizations, is not the type of "associational" organization contemplated by the Clayton Act.  The Court, therefore, withdraws its previous finding to the contrary as improvidently entered.  *See* (Document No. 459 Memorandum and Recommendation at p. 22].

Section 16 of the Clayton Act requires a plaintiff to demonstrate the threat of an antitrust injury.  The FCA does not assert that it has in the past or will in the future suffer an antitrust injury.  Instead, it asserts that its consumer members are or will be harmed by the defendants' actions.  Admittedly, its consumer members are not voting members and have no say in the governance of the organization.  And, to the extent that the category of membership designated as "Friends" may claim individual injury, it is not of the type that the statute and case law permits the FCA to prosecute.

Therefore, the Court is of the opinion that the defendants' motion to dismiss, pursuant to FRCP 12(h)(3), should be and it is Hereby Granted.

It is so Ordered.

SIGNED at Houston, Texas this 27th day of September, 2010.

_____
Kenneth M. Hoyt
United States District Judge